[Civ. No. 3773.   Fourth Dist.   June 24, 1949.]

JOHN BUSICK, Appellant, v. ROSENBERG BROS. & CO. (a Corporation) et al., Respondents.

Claude L. Rowe for Appellant.

Harris, Willey & Harris, John A. Willey and Everett G. Harris for Respondents.

BARNARD, P. J.—This is an action based upon the breach of a contract for the purchase of certain raisins.

On October 22, 1946, plaintiff sold his entire crop of raisins to Bonner Packing Company for $335 per ton. The contract provided that the seller guaranteed the fruit to be his sole and absolute property ''free from all encumbrances''; that title should immediately pass to the buyer; and that payment was to be made on delivery. It also contained the provision ''No moisture test. If moisture excessive contract to be canceled without penalty.'' On October 28, 1946, the plaintiff delivered a portion of his crop to Bonner Packing Company, which refused to accept them, saying they were too wet.

On November 8, 1946, the plaintiff wrote to Bonner Packing Company stating that its men had rejected his raisins for moisture and had canceled his contract, and that he intended to sell the raisins for the best price obtainable. On the same day, November 8, he entered into a contract with the defendant for the sale of 100 tons of his raisins at $350 a ton. This contract also contained a provision that the seller guaranteed the fruit to be his sole and absolute property free from all encumbrances.

On November 12, 1946, the defendant received a telegram from Bonner Packing Company stating that it had a contract for these raisins, dated October 22, and giving notice that it

was insisting upon delivery to it under the terms of that contract. On November 12, Bonner Packing Company also sent a letter to the plaintiff stating it had been informed that he had contracted with the defendant for the sale of his raisins notwithstanding his previous contract with Bonner Packing Company, and insisting upon delivery of the raisins in accordance with the contract of October 22. The plaintiff admitted receiving this letter and probably received it on November 13. On November 13, he attempted to deliver a part of the 100 tons of raisins to the defendant and offered to deliver the balance. The defendant refused to accept delivery for the reason that it had just been notified that Bonner Packing Company was claiming the raisins under its previous contract.

On November 13, the plaintiff sent a letter to Bonner Packing Company demanding that it "immediately revoke your order to Rosenberg Bros. & Co. that they not buy my raisins"; stating that Bonner Packing Company had terminated its contract by insisting on a moisture test; and demanding that it cease representing that it owned these raisins or that he would hold it responsible for any loss he might sustain in failure to sell these raisins at top market price. On November 15, the plaintiff wrote to the defendant notifying them that he had delivered 16 tons of raisins on November 13, and that they had been refused. On November 18, defendant's counsel replied to this letter stating that, "as you already know," delivery had not been accepted because defendant had been notified by Bonner Packing Company that it had purchased the raisins and was insisting upon delivery. On December 27, the plaintiff wrote to the defendant offering to deliver the raisins under the contract of November 8. On December 30, defendant's counsel replied to that letter stating that delivery of the raisins would not be accepted as title to the raisins had already passed to Bonner Packing Company at the time the November 8 contract was entered into.

The price of raisins remained at $350 until about November 30, 1946. It then began to drop and from about the middle of January to March the packers were not buying raisins. On March 28, 1947, the plaintiff sold his raisins for $235 a ton. He then brought this action claiming a loss of $11,500.

The court found that a contract was entered into on November 8, 1946, between the plaintiff and the defendant for the sale and purchase of 100 tons of raisins at $350 per ton; that the defendant had refused to accept delivery of the

raisins without just cause or excuse; that the plaintiff was not forced to sell said raisins for $235 per ton; that the plaintiff had an opportunity on or about November 12, 1946, to sell the raisins to Bonner Packing Company for $335 a ton; that plaintiff suffered damage in the sum of $1,500; that at the time the contract of November 8, 1946, was entered into the raisins were the sole and absolute property of the plaintiff, free of all encumbrances; and that prior to that date and on or about October 28, 1946, the plaintiff's contract with Bonner Packing Company was canceled. Judgment was entered in favor of the plaintiff for $1,500, from which judgment the plaintiff has appealed.

The appellant contends that in order to mitigate the damages he was not compelled to attempt to sell the raisins to Bonner Packing Company at a time which was prior to the respondent's breach of this contract, and for $15 per ton less than the then market price. This is based upon the fact that Bonner Packing Company's telegram to the respondent and its letter to the appellant insisting upon its contract were both dated November 12, and that delivery to and refusal by the respondent occurred on November 13. It is further contended that the fact that the appellant refused to comply with the Bonner Packing Company's demand upon him, at a time when his contract with that company had been canceled and when the market price of raisins was $15 per ton more than the price called for by that contract, does not indicate that the appellant could have mitigated the damages. In effect, the contention is that the court's finding that the appellant was damaged only in the amount of $1,500 is without evidentiary support, and that the evidence conclusively shows that, despite the fact that he did everything that he could reasonably have done, he was damaged in the sum of $11,500.

The uncontradicted evidence is that the market price of raisins remained at $350 for two weeks or more after November 13, when the respondent refused to accept the raisins, although the court impliedly fixed this value at $335 per ton. The appellant testified that after Bonner refused to accept the raisins on October 28, it looked to him as though the price was going to go up "so I wasn't in a hurry"; that on November 8, when he sold to Rosenberg he thought it was better to sell only 100 tons "in case that there was a chance of going up"; that the price of raisins stayed at $350 for two weeks after November 13; that he knew on November 13 that the respondent would not take any of his

raisins; that after the respondent's refusal to take the raisins he did not immediately go out on the open market and try to sell them to someone else; that he did not offer to sell them to anyone else for "two weeks or so"; and that he could have delivered them to Bonner Packing Company and received $335 a ton. There was evidence that the respondent still wanted raisins at $350 on November 30, and that on that date it informed the appellant that it would take the raisins under its contract if he would get a cancellation of his contract with Bonner Packing Company. While the court found that the Bonner contract was canceled prior to November 8, the further finding that "said fruit" was then "free of all encumbrances," if technically correct, does not reflect the actual situation which admittedly existed. The Bonner Packing Company was insisting on its contract, and the legal effect of what had occurred in connection therewith had in no way been determined. In a practical sense, at least, there was a serious encumbrance on the title to the raisins.

It was incumbent upon the appellant to act with reasonable promptness after the respondent's refusal to accept the raisins on November 13, for the reason stated. The evidence justifies the inference that the long delay resulted both from the appellant's hope that the market would continue to rise, and from the insistence of Bonner Packing Company on the enforcement of its contract with him. The respondent is not responsible for that situation and its reluctance to proceed with its contract, under the circumstances, was natural. Instead of forcing the issue with the Bonner Packing Company the appellant chose to await developments, making no attempt to sell the raisins for some two weeks, and no serious attempt for a considerable period thereafter. The appellant testified that nothing was said about the Bonner contract at the time the Rosenberg contract was executed, and the court found to that effect. The respondent knew that a contract with Bonner had been previously executed, but did not know that it had not been canceled, and accepted the appellant's guarantee that his title was good and that he was free to sell his raisins.

It clearly appears that the appellant could have sold to the Bonner Packing Company for $335 per ton within any reasonable time. By securing a release from that concern he could have sold for $350 a ton in the open market or to the respondent, at least up until the end of November. The existence of the Bonner contract was the sole cause for re-

spondent's refusal to accept the raisins. If that contract was canceled, as found by the court, this fact was not established and the contract was still being insisted upon by the Bonner Packing Company. Instead of dealing with the Bonner Packing Company, getting a release from it, or attempting to hold it responsible, the appellant delayed action for months and then sought to place the entire blame upon the respondent.

Under these circumstances, it cannot be said that the court's findings are without support in the evidence and it cannot be held, as a matter of law, that the appellant did everything that he should have done and that he was entitled to recover the full difference of $115 a ton. The trial court was justified in believing that the entire blame for the full amount of the loss which occurred did not rest with the respondent and that only a part thereof was attributable to it. There is no evidence that the respondent in any way interfered with the appellant's right to sell these raisins, either for $350 or for $335 per ton. While the appellant later twice demanded that the respondent comply with its contract the respondent had definitely refused on November 13, as the appellant admittedly understood, and the only subsequent "negotiations" between the parties which appears in the record is that on November 30 the respondent offered to take the raisins at $350 if the appellant would secure a release from Bonner Packing Company from the claim upon which it was insisting.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied July 21, 1949.